DONALDSON BROS. & CO. *et al. v.* THOMAS THORNBURG *et al.**

*(Knoxville.* September Term, 1924.)

1. **ESTOPPEL.** What constitutes ''estoppel.''

   Subject to exceptions, mere knowledge and silence are insufficient to create estoppel; but there must be a declaration or an act, done with respect to another party, with knowledge of his rights by the party sought to be affected, which was intended to influence and did influence conduct of other party. (*Post, pp.* 468-473).

2. **FRAUDULENT CONVEYANCES.** Wholesale grocer held not estopped to enforce liability, under Bulk Sales Law, of purchaser of ,stock from retailer.

   Complainant, wholesale grocer, *held* not estopped to enforce liability of defendant purchasing stock from a retailer indebted to complainant, and failing to comply with bulk sales statute (Pub. Acts 1901, chapter 133, being Shannon's Ann. Code, section 3193a1 et seq.), where complainant did or said nothing tending to influence defendant in purchasing the stock from retailer. ' (*Post, pp.* 468-473).

   Acts cited and construed: Acts 1901, ch. 133.

   Cases cited .and approved: Decherd v. Blanton, 35 Tenn., 376; Mays v. Wherry, 3 Cooper's Chy., 80.

   Cases cited and distinguished: Daly v. Drug Co., 127 Tenn., 414; Mahoney-Jones Co. v. Sams Brothers, 128 Tenn., 211; Howell v. Howell, 142 Tenn., 35; Moses v. Sanford, 70 Tenn., 659; Askins & Wife v. Coe, 80 Tenn., 676; Morris v. Moore, 30 Tenn., 433; Rogers v. Colville, 145 Tenn., 650; Morristown Furn. Co. v. People's Nat. Fire Ins. Co., 259 S. W., 540.

   Code cited and construed: Sec. 3193 (S.).

---

*Headnote 1. Estoppel, 21 C. J., sections 122, 154; 2. Estoppel, 21 C. J., sections 136, 154; Fraudulent Conveyances, 27 C. J., section 904.

*On statutory requirements on sale of stock of goods in bulk, see note in 2 L. R. A. (N. S.), 331; 20 L. R. A. (N. S.), 160; L. R. A. 1915E, 917.

FROM HAMBLEN.

Appeal from the Chancery Court of Hamblen County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. M. H. Gamble, Chancellor.

McCanless & Taylor and E. F. Smith, for appellants.

Turner, Kennerly & Cate, for defendants.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by Donaldson Bros. & Co. (a partnership) against Thomas Thornburg and William Hickman, to recover a decree against them on an account for the sum of $429.69 for goods sold and delivered to the defendant Thomas Thornburg.

Complainant is a partnership and is engaged in the wholesale grocery business at Morristown, in Hamblen county, Tenn. Defendant Thornburg was a retail merchant engaged in the general mercantile business at Strawberry Plains, in Jefferson county, Tenn., some ten or twelve miles from Morristown. Thornburg sold his stock of goods and fixtures to the defendant Hickman for the consideration of $527.68 in cash, or the equivalent.

Thornburg and Hickman did not comply, or attempt to comply, with what is commonly known as the bulk sales statute, being chapter 133 of the Public Acts of 1901, brought into Shannon's Ann. Code, section 3193a1 et seq.

150 Tenn.—30.

At the time of the sale, Thornburg was indebted to complainant by account in the sum of $429.69.

Defendant Hickman had intermingled the Thornburg stock with other goods purchased by him, had sold a large portion of said stock, and had replenished it with other goods from time to time, thereby rendering an identification of the Thornburg stock impossible. The bill, therefore, sought a personal decree against defendant Hickman.

Defendant Thornburg answered the bill, and denied that he owed the account sued on. After filing his answer, Thornburg, it seems, paid no further attention to the cause, and it will not be necessary to make further reference to his defense.

Defendant Hickman answered the bill, admitted the purchase of the stock of goods from Thornburg, admitted that the bulk sales statute was not complied with, averred that he was informed by Thornburg that he owed no debts; that he believed what Thornburg said; and acted on that assurance.

The answer further averred, for the reasons hereinafter to be stated, that complainant was estopped to claim the benefits of the bulk sales statute as against him, or to hold him liable on its account against Thornburg.

Later, Hickman filed an amended answer and cross-bill, in which he averred that other persons were claiming that Thornburg was indebted to them at the time of the sale, and were claiming that he (Hickman) was liable for such debts; that one alleged creditor had sued him before a justice of the peace, and he sought to have that suit against him enjoined, and to have an order requiring all persons having claims against Thornburg and insisting

that he (Hickman) was liable for same, by reason of his failure to comply with the bulk sales statute, to file them and have them adjudicated in this cause.

An injunction was issued as prayed for, and other persons having claims against Thornburg came into this cause by petition, and sought a decree against Hickman to the value of the goods purchased by him.

The cause was finally heard by the chancellor upon the pleadings and proof, and he was of the opinion and decreed that the creditors of Thornburg, who had filed their claims in the present cause against defendant Hickman, were entitled to the relief sought, except complainant. As to it, the chancellor was of the opinion that defendant Hickman had sustained his plea of equitable estoppel, and he therefore dismissed complainant's bill.

The aggregate amount of the claims filed against defendant Hickman, excluding the claim of complainant, being less than the price paid by Hickman to Thornburg for the stock of goods, it was ordered that petitioners recover of Hickman the amount of their respective claims and costs incident to their recovery.

The decree provided, however, that, in the event complainant effected an appeal from so much of the decree as was adverse to it, then the decree in favor of the several petitioners would not be enforced until said appeal was finally disposed of in the appellate courts, and not then, unless the decree of the chancellor should be affirmed; and in the event of a reversal as to complainant, then the whole decree would be recast so that the petitioners would share ratably with complainant.

Complainant prayed, was granted and perfected an appeal to the court of civil appeals from so much of the

decree of the chancellor as was adverse to it. That court reversed the decree of the chancellor, holding that defendant Hickman's plea of estoppel was not sustained by the proof, and that complainant was entitled to participate with other creditors of Thornburg in the decree against Hickman, and that Hickman was liable to all the creditors of Thornburg proving their claims in this cause, including complainant, to the extent of the amount paid by him for the goods purchased, and remanded the cause to the chancery court for further proceedings.

The cause is now before this court upon a writ of *certiorari* sued out by defendant Hickman to have the decree of the court of civil appeals reviewed.

There is but one question presented by defendant Hickman's assignments of error in this court, and that is, Is complainant estopped, by its conduct, to insist upon the liability of defendant Hickman for the debt owing to it by Thornburg, Hickman having purchased Thornburg's stock of goods in bulk and otherwise than in the ordinary course of business; the bulk sales statute not having been complied with?

The facts are undisputed. Thornburg had been in business at the place mentioned for eight or nine years. During that time Lee K. Donaldson, a member of the firm of Donaldson Bros. & Co., and who was the traveling salesman for said firm, had visited him often and sold him many bills of merchandise. In November, 1922, and about two months before the filing of the bill in this cause, he called at the place of business of Thornburg between nine and ten o'clock in the morning. He knew, and had known for about two weeks, that Thornburg desired to sell his business, and that he was endeavoring to do so.

When he called at Thornburg's place of business on the day last mentioned, defendant Hickman, and perhaps others, was in the store. Donaldson learned that Thornburg had sold his stock of goods to defendant Hickman, and the stock was then being invoiced. He also knew that Thornburg was then indebted to complainant in the sum of $429.69, but he did not inform defendant Hickman of this fact. He remained in the store some twenty or thirty minutes. He and Thornburg were out of the store on the porch together for a brief period, but it does not appear what, if anything, was said while they were so together. Before leaving, Donaldson sold Hickman a small bill of goods, to become a part of the stock purchased by him from Thornburg, and he solicited a continuance of Hickman's trade. Nothing was stated and nothing was said with reference to the indebtedness of Thornburg while Donaldson was in the store. Donaldson was familiar with the bulk sales statute; his firm having had occasion to invoke the provisions of that law in other instances. After the bill in this cause was filed, Donaldson was asked why he did not tell Hickman of the indebtedness of Thornburg to complainant, and he replied that he considered Thornburg an honest man, and thought he would pay his debts.

Upon the foregoing facts defendant Hickman insists that complainant is estopped to insist upon his liability, because of his failure to comply with the bulk sales statute, and that the court of civil appeals was in error in not so holding.

In the case of *Daly* v. *Drug Co.*, 127 Tenn., 414, 155 S. W., 167, Ann. Cas., 1914B, 1101, this court had under

consideration the construction of the bulk sales statute. In that case it was said:

"Where the sale and purchase of a merchant's stock of goods in bulk, or a half interest therein, was fraudulent and void as against his creditors, upon the ground that the required notice was not given to them, the purchaser cannot defend against the suit of such creditors upon the ground of acquiescence, estoppel, abandonment, or laches, where the creditors simply refrained from suing for fourteen months, and allowed the purchaser to sell such goods, where he was not misled or prejudiced thereby."

In the case of *Mahoney-Jones Co. v. Sams Brothers*, 128 Tenn., 211, 159 S. W., 1094, it is said:

"It [the statute] requires the purchaser to make 'full, explicit inquiry of the seller as to the names and places of residence or place of business of each and all of the creditors of the seller,' and requires him to notify 'each of the creditors of the seller, of whom the purchaser has knowledge, or can with reasonable diligence acquire knowledge.' The act provides that the sale shall be presumed to be fraudulent and void as against 'the creditors of the seller, unless,' " etc.

In the recent case of *Howell* v. *Howell*, 142 Tenn., 35, 215 S. W., 279, this court quoted with approval from Ruling Case Law as follows:

"The statutory test is whether the sale was made in the usual way in which a merchant owing debts conducts his business, or whether he takes an unusual method of disposing of his property in order to get the money for his own use, and leave his creditors unpaid."

As hereinbefore stated, there is no insistence in the instant cause that the bulk sales statute was complied with, nor is there any controversy as to the proper construction of that statute. It is therefore unnecessary to set out in this opinion the provisions of the statute. The holding of this court in the above cases shows the strictness with which the act has been construed in enforcing the requirement that the purchaser of the stock of goods must comply with the act, or become liable for the debts of the seller to the extent of the value of the goods purchased.

We will now consider defendant Hickman's defense of estoppel.

In the case of *Moses* v. *Sanford,* 2 Lea (70 Tenn.), 659, referring to equitable estoppel, this court said:

"The principle of an estoppel of this character is that the party who is to be affected by it has, by his own word or conduct, misled another into a course of action that, if the estoppel is not enforced, will work an injury to him who is thus misled," citing *Decherd* v. *Blanton,* 3 Sneed, 376.

In *Askins & Wife* v. *Coe,* 12 Lea (80 Tenn.), 676, it is said: "The doctrine can only apply where some declaration is made or act done to influence the conduct of another, in his dealing, and which actually leads him into a line of conduct which must be prejudicial to him, unless the party so misleading him be cut off from asserting a conflicting right."

In *Morris* v. *Moore,* 11 Humph., 433, it is said: "To justify the application of this principle, it is material that the party should be fully apprised of his rights, and should, by his conduct or gross negligence, encourage

or influence the purchase; 'for if he is wholly ignorant of his rights, or the purchaser known them, or if his acts, or silence, or negligence, do not mislead, or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part.' 1 Story's Eq. Jur., section 386.''

In *Rogers* v. *Colville*, 145 Tenn., 650, 238 S. W., 80, this court quoted with approval from 21 C. J., 1135, as follows:

''In order to create an estoppel, the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered, there can be no estoppel *in pais,* and *a fortiorari* an act clearly beneficial to the person setting up the estoppel, cannot be relied on. In the absence of injury, it is, of course, immaterial that the other elements of estoppel are present.''

In *Morristown Furniture Co.* v. *People's National Fire Insurance Co.,* 259 S. W., 540, this court quoted with approval from 10 Ruling Case Law, 697, as follows:

''The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared; that is, the person setting up the estoppel must have been induced to alter his position in such a way that he will be injured, if the other person is not held to the representation or attitude on which the estoppel is predicated. Furthermore, an equitable estoppel cannot arise, except when justice to the rights of others demands. It was never intended to work a positive gain

to a party. Its whole office is to protect him from a loss, which, but for the estoppel, he could not escape. Consequently the estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed."

Now, applying the rule above announced to the facts of this cause, we are of the opinion that complainant is not estopped to insist that defendant Hickman is liable to it because of his failure to comply with the bulk sales statute. One of the essential elements of equitable estoppel is lacking. It is this: Donaldson made no declaration, nor was he guilty of any act that misled defendant Hickman to his injury. Hickman did nothing that he would not have done if Donaldson had not appeared on the scene. Hickman had already purchased the stock of goods before Donaldson appeared. The contract had been fully agreed upon by Thornburg and Hickman, and the stock was then being invoiced. Donaldson never did or said anything to induce Hickman to make the purchase. He never made any representation to him with reference to the stock, and never said anything which tended to influence Hickman in the transaction.

Subject to exceptions, mere knowledge and silence are not sufficient to make out an estoppel. There must be a declaration or an act, done with knowledge of his rights by the party sought to be affected, which was intended to influence and did, in fact, influence the conduct of the other party. *Morris* v. *Moore,* supra; *Decherd* v. *Blanton,* supra; *Mays* v. *Wherry,* 3 Cooper's Chy., 80.

There is no error in the judgment of the court of civil appeals, and it is affirmed, with costs.