HENRY KING & COMPANY v. ARNETT BROTHERS.

Middle Section.   February 11, 1928.

R. S. Brown, of Murfreesboro, for appellants, Arnett Brothers.

Haskell B. Talley, of Murfreesboro, for appellee, Henry King & Co.

CROWNOVER, J.   The appellee has made a motion to strike the appellants' assignment of. error because they have not made appropriate references to the pages of transcript, and have not cited the law in accordance with the rules of this court.   After an examination of the assignment of errors, we are of the opinion that the assignment is sufficient.   While the citation to the record could have been a little more specific, and the citation of more authorities would have helped the court, still we think that our rules should receive a reasonable construction, and we think that appellants have reasonably complied with the rules; hence the motion to strike the assignment for these reasons will be overruled.

This suit was brought by Henry King & Company, a corporation, to recover for the value of certain merchandise and store fixtures sold by O. B. Harrell to the defendants Arnett Brothers in violation of the Sales in Bulk Statute.   The complainant alleged in its bill that O. B. Harrell had sold certain merchandise and fixtures in December, 1924, to the defendants Arnett Brothers in violation of the Sales in Bulk Statute, and that Harrell owed the complainants $716.65 at the time of said sale.

The defendants answered and denied all liability, for the reasons that the portion of the stock of merchandise purchased by them from Harrell, amounting to $135, was purchased by the piece in the ordinary course of trade and was not a sale in bulk in violation of the statute; that the complainant being advised of the sale of said merchandise to the defendants waited for several months thereafter and then accepted Harrell's note, secured by his wife, for the amount of its account, and thereby waived all rights that it might have against the defendants; and that shortly after the defendants purchased said merchandise they had the treasurer of the complainant corpo-

ration to release a mortgage of record against Harrell, and at that time said treasurer told him, before they had settled with Harrell for said merchandise, that the complainant had nothing further against Harrell; hence the complainant was estopped to recover from the defendants.

Many depositions were taken and the case was tried before Chancellor T. L. Stewart sitting by interchange with the regular Chancellor. The Chancellor held that the defendants were not liable for any goods that they purchased at the auction sale, nor were they liable for the value of the fixtures purchased from Harrell; but the Chancellor did hold that the defendants were liable to the complainant for the $135 worth of goods purchased by them from Harrell which sale was in bulk and not in the ordinary course of trade, and was therefore in violation of the Sales in Bulk Statute. The defendants excepted, appealed to this court, and have assigned three errors, the substance of which is that the Chancellor erred in rendering a decree for $135 against them, (1) because their purchase of the portion of the remnant of the stock of goods for $135 was in the ordinary course of trade and not in bulk. (2) Because the complainant waived its claim against these defendants, if such it had, because it accepted Harrell's note, secured by his wife after it was advised of the sale of said goods to the defendants; and (3) because the treasurer of the complainant told the defendants after he had been advised of the sale to the defendants and before they had settled with Harrell, that the complainant had nothing further against Harrell, and complainant is therefore now estopped to recover of the defendants.

The facts necessary to be stated are that complainant is a corporation operating a wholesale grocery store at Murfreesboro, and O. B. Harrell had for several years operated a retail mercantile business at Dilton, several miles out on the pike from Murfreesboro. In December, 1924, Harrell decided to have an auction sale of his stock of merchandise, and after advertising in the local papers and by hand-bills, he had an auction sale for one week, which was attended by a large crowd of customers, and most of his stock of goods was sold during this auction sale. The defendants, Arnett Brothers purchased about $50 worth of merchandise by the piece at the auction sale. Some two or three days after the auction sale had ceased, the defendants purchased merchandise by the piece to the amount of from $135 to $150, and also purchased the fixtures in the store house for $200, and thereafter Harrell removed to a nearby town and took the remainder of his goods with him.

The defendants purchased Harrell's house and lot, and it appears that they sold a portion of the land to another person, but when they had a settlement the purchaser refused to pay for the land, claiming that there was a registered mortgage of $1300 in favor of Henry

King & Company against the house and lot. Two of the Arnett Brothers upon learning this fact went to Murfreesboro and interviewed Mr. Henderson, treasurer of the Henry King & Company, who informed them that the mortgage had been settled but by oversight had not been released of record. So at the request of Arnett Brothers he went with them to the court house and released the mortgage. They say that they informed him that they had purchased the house and lot and some merchandise from Harrell and asked him whether the complainant held anything else against Harrell, to which he replied that there was nothing.

However, it appears that the complainant had sold merchandise in considerable quantities to Harrell at different times, and that the mortgage of $1300 on the house and lot had been executed to secure a past grocery account, and at the time Harrell sold the merchandise and the property to Arnett Brothers he owed the complainant more than $800 on account for merchandise.

No attempt was made by Arnett Brothers and Harrell to comply with the Sales in Bulk Statute by taking an inventory of the stock and by giving notice as provided by the statute. Sometime after this sale to Arnett Brothers, Harrell made a small payment on his account to the complainant, which left $716.65 balance due, and he requested the complainant not to attempt to collect this account from the defendants as it might complicate his deal with them, so the account was let run until sometime in August, 1925, when Harrell executed a note, secured by his wife, for the amount of the account and this note was afterwards renewed by Harrell, and about sixteen months after the deal with Arnett Brothers, complainant took up the matter with Arnett Brothers and insisted on payment of the account, which they refused and this suit resulted.

We are of the opinion that the first assignment of error is not well taken as we think that the sale of the $135 worth of goods was in violation of the Sales in Bulk Statute, and was a sale of a portion of the stock of merchandise otherwise than in the ordinary course of trade in the regular and usual transaction of the seller's business. Harrell had been running an auction sale for a week and had disposed of most of his goods, and some three or four days thereafter Arnett Brothers purchased the $135 worth of goods, which consisted of plow points, plows, etc., "remnants" as they say, by the piece at a discount, and Harrell removed the remainder of his goods to a neighboring town, hence this assignment of error is overruled.

By the second assignment of error it is insisted that the complainant waived his rights, if any, against the defendants by accepting Harrell's note with personal surety. We think that this assignment of error is not well made. It has been held in a few States that the acceptance of a note with personal security after

knowledge of sale of stock of merchandise in violation of the Sales in Bulk Statute, operated as a waiver of the right against the purchaser of the stock of goods. Schramm, etc., Co. v. Shope, 200 Ia., 760, 205 N. W., 350. But it has been held in other States that the taking of a note by the plaintiff in settlement of the account merely changed the form of the already existing indebtedness and was not a release of the purchaser for his violation of the Bulk Sales Act, and that the taking of a note was not a waiver of the plaintiff's right to proceed against the purchaser for the amount due the plaintiff. See Haralson v. Mendel (Ga. App.), 136 S. E., 88. We think that the reasoning for the rule set out in the latter case is better. In Tennessee it has been held that the taking of personal security raises a presumption that the vendor intended to waive his lien, but the presumption may be refuted. See. Campbell v. Baldwin, 2 Humph., 248; Electric Light Co. v. Gas Company, 99 Tenn., 370, 42 S. W., 19. In this case, Henderson, the treasurer of complainant said that he did not ask for the surety on the note and that he did not waive any claim that he had against these defendants, but told Harrell that complainant would hold these defendants for the amount of the account. Hence we think that this assignment of error should be overruled.

We think that the third assignment of error raises a much more serious proposition. It is insisted, by this assignment that the complainant is estopped to recover against the defendants because Henderson, the treasurer of complainant, told the defendants before they had settled with Harrell that the complainant had nothing further against Harrell. He released the $1300 mortgage on the house and lot, and they asked him if he had anything else against Harrell and he replied that complainant did not. Henderson strongly denies this, but two of' the Arnetts testify positively to this conversation. So far as the record shows all these people stand equally well and there is nothing in the record against their character. But after reading the whole record we think that Henderson told these Arnett Brothers that complainant held nothing further' against Harrell. Henderson admits that shortly after this transaction, he learned of the sale to Arnett Brothers and he states that he told Harrell that he would have to hold Arnett Brothers for this account. He further states that Harrell requested him to let the matter rest as he did not want to complicate his deal with Arnett Brothers. He testifies in another place that Harrell requested a delay and stated that he would pay the account. Nothing was said to Arnett Brothers about the account until sixteen months had elapsed, although they had been trading with the complainant during the whole time. The complainant let the account run from January until August, and accepted Harrell's note secured by his wife, but still did not notify Arnett

Brothers. The proof further shows that when Henderson informed Arnett Brothers about Harrell's account, in front of a store in Murfreesboro, they immediately denied liability because Henderson had informed them that he held no account against Harrell in January. Henderson denied it and they created some excitement on the street in Murfreesboro. Hence we think that all the facts and circumstances go to show that Henderson did tell Arnett Brothers that the complainant held nothing further against Harrell.

But it is insisted that this statement to the defendants could not work an estoppel because the defendants had already settled with Harrell before the statement was made. See Colonial Milling Co. v. Holt Brothers, 3 Tenn. App. Rep., 617; Donaldson Brothers v. Thornburg, 150 Tenn., 464, 265 S. W., 684. Of course if the settlement with Harrell was made by Arnett Brothers before the statement was made by Henderson, then that statement would not work an estoppel under the authorities above cited. But after an examination of the record, we are of the opinion that the statement was made by Henderson to Arnett Brothers before they had a settlement with Harrell. Both of the brothers testify that they had not settled with Harrell at the time the statement was made, but one of them seems to have become somewhat confused on cross-examination and stated that they had settled with Harrell before Henderson made that statement. There is nothing in the record to show when the mortgage was released and when Henderson made the statement, and there is nothing in the record to show the exact time when Arnett Brothers settled with Harrell for the fixtures and merchandise purchased, but taking all the statements altogether, we think the record shows that the statement was made by Henderson before the settlement was made by Arnett Brothers with Harrell. Creditors may waive the right to the benefit of the Bulk Sales Statute, or estop themselves to claim that a sale was invalid because the requirements of the Bulk Sales Statute were not complied with. See 27 C. J., 878, sec. 887. This assignment of error must be sustained.

It results that the last assignment of error having been sustained, the decree of the Chancellor is reversed and the bill is dismissed. The cost of the cause, including the cost of the appeal is adjudged against the complainant and the surety on the prosecution bond, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.